UNITED STATES DISTRICT COURT
WESTERN DISTRICT NORTH CAROLINA
STATESVILLE DIVISION
CIV. NO. 5:98-CV-19-MCK

FILED
STATESVILLE, N.C.
1999 MAY 10 PM 4: 29
U.S. DISTRICT COURT
W. DIST. OF N.C.

CLAY HALLMAN, DEREK MILLER )
and CHRISTOPHER WILLIAMS, )
)
             Plaintiffs, )
)
v. )
)
RAGE, INC., and )
PIZZA HUT OF HICKORY NO. 2, INC., )
)
             Defendants. )
)
)

**MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

## INTRODUCTION

This matter is before the Court on the Motion of Defendants Rage, Inc. ("Rage") and

Pizza Hut of Hickory No. 2, Inc. ("Pizza Hut"), pursuant to Rule 56 of the Federal Rules of

Civil Procedure and Rules 7.1 and 7.2 of the Local Rules of the United States District Court

for the Western District of North Carolina, for Summary Judgment as to the claims of

Plaintiffs Clay Hallman ("Hallman"), Derek Miller ("Miller") and Christopher Williams

("Williams") (collectively, "plaintiffs") seeking damages for alleged racial discrimination

under 42 U.S.C. §§ 1981 and 2000a. Rage and Pizza Hut move for Summary Judgment on

four grounds:

1.    Plaintiffs have failed to produce evidence, other than their own unsupported and
speculative testimony, that Rage or Pizza Hut intentionally discriminated against
them as required by 42 U.S.C. § 1981 or 2000a.

2.    Plaintiffs have failed to produce evidence of injury attributable to alleged
conduct of Rage or Pizza Hut that is cognizable under 42 U.S.C. § 1981 or
2000a.

3.     Plaintiffs have failed to produce evidence to support a claim for punitive damages.

4.     Plaintiffs have failed to produce evidence that Rage or any employee or agent of Rage was involved in the conduct alleged in the complaint.

Because plaintiffs have failed to produce sufficient evidence to establish a *prima facie* case under 42 U.S.C. § 1981 or 2000a, defendants are entitled to judgment as a matter of law.

## STATEMENT OF FACTS

This matter arises out of an incident that allegedly occurred on March 2, 1995 at a Pizza Hut restaurant in Hickory.[1]  Plaintiffs claim that a Pizza Hut employee discriminated against them, by requiring them to pay for their food before receiving it, on the basis that three of the four people seated at their table were black.[2]  During the six-month discovery period, defendants served interrogatories and document requests on plaintiffs and took the depositions of plaintiffs Hallman, Miller and Williams.  Defendants also deposed David Coats, the fourth person seated at the table, and Louis White, the Pizza Hut manager.  Plaintiffs served no interrogatories or document requests and did not initiate the scheduling of a single deposition during the entire discovery period.

Based on the evidence obtained during discovery (particularly plaintiffs' interrogatory responses and deposition testimony), plaintiffs cannot show (1) intentional discrimination by Pizza Hut or Rage; (2) actual injury recognized under the statutes cited in the complaint; (3)

---

[1]Plaintiffs filed their complaint on March 2, 1998.

[2]Plaintiff Hallman is white.  One of the three black individuals who were seated at the table, David Coats, chose not to file suit because he did not feel that the employee's conduct was discriminatory.  Coats Dep., pp. 12, 47.

2

evidence to support their claim for punitive damages; or (4) evidence that Rage had no involvement in any conduct alleged in the complaint.

## I. General Factual Account

On March 2, 1995, plaintiffs were employed by Armstrong Relocation Company, a moving company located in Charlotte. Williams, p. 23; Hallman, pp. 10-11; Miller, pp. 64-65.[3] At approximately 2:30 p.m., after loading their truck with household furniture that was being moved from Hickory to Atlanta, the three plaintiffs, accompanied by co-worker David Coats, entered the Hickory Pizza Hut. Williams, pp. 26, 29, 35-36; Hallman, pp. 12, 14. The Pizza Hut was staffed by the shift manager, Louis White, and a waitress. Williams, p. 37. Plaintiffs and Coats were seated by the waitress who took their drink and pizza orders. Williams, pp. 29, 37; Hallman, pp. 15, 17; Miller, p. 133.[4] The drinks arrived shortly thereafter. While waiting for their pizza, one or two white carry-out customers entered the

---

[3]Plaintiffs' depositions were taken on December 15, 1998. Their deposition transcripts will be cited as: "Williams, p. __ " (Excerpts attached to Motion for Summary Judgment as Exhibit A); "Hallman, p. __ " (Exhibit B); "Miller, p. __ " (Exhibit C). The deposition of David Coats, the fourth person at plaintiffs' table, was taken on March 1, 1999. His deposition transcript will be cited as "Coats, p. __ " (Exhibit D). The deposition of the Pizza Hut manager, Louis J. White, was taken on April 9, 1999. His deposition transcript will be cited as "White, p. __ " (Exhibit E).

[4]Each of the plaintiffs' versions of the incident differs in material respects. For example, Williams and Hallman testified that beer was ordered and consumed at the table. Williams, p. 33; Hallman, p. 16. Miller, however, denies that beer was ordered. Miller, p. 127. As another example, Williams and Hallman testified that they asked the waitress "what could they get for free." Williams, p. 60; Hallman, p. 17. Miller testified there was no discussion about free food or beer. Miller, p. 132. As yet another example, Hallman and Williams testified that members of the group commented to the waitress on the length of time that it was taking for their pizza to arrive. Hallman, pp. 17, 20; Williams, p. 61. Miller, on the other hand, testified that no one complained about any delay in receiving their food. Miller, p. 137.

3

Pizza Hut, paid for pizza, received it and left. Williams, p. 29; Miller, p. 136; Complaint, ¶ 39. Plaintiffs and Coats were "cracking jokes" and "teasing" the waitress, and asked her "what can we get here free today," and whether they could get free refills on beer. Williams, p. 33; Hallman, pp. 17-18; Coats, p. 14.[5]

Before their pizza arrived, police officers entered the Pizza Hut.[6] Williams, p. 29; Hallman, p. 23; Miller, p. 137. According to plaintiffs, the police officers and the manager approached their table. One of the police officers requested that the group pay for their food before receiving it. Williams, p. 29; Miller, p. 139; Hallman, p. 22. Plaintiffs contend that the request to prepay was communicated by a police officer, not the Pizza Hut manager (Hallman, p. 26; Miller, p. 139), and that defendants' discriminatory act was the "[Pizza Hut manager's] contacting the police in order to communicate a discriminatory demand to the plaintiffs." Response to Interrogatory No. 17 (Attached to Motion for Summary Judgment as Exhibit F); Complaint ¶ 40, 42.

Plaintiffs prepaid the bill "without objection," received their pizza, ate it in the restaurant, and left. Miller, p. 142. Even though plaintiffs now contend that the request to prepay was discriminatory, no one in the group suggested leaving the Pizza Hut. Hallman, pp. 47-48; Miller, p. 142. Instead, the group was "content" to stay and eat their pizza after paying

---

[5]Plaintiffs do not claim that any conduct of the waitress was discriminatory. In fact, plaintiffs were satisfied with her job performance and left her a tip. Hallman, pp. 15, 53; Williams, pp. 59-60; Miller, p. 125. The only conduct that plaintiffs contend was discriminatory was the manager's decision to call the police.

[6]In response to a subpoena issued by defendants, the Hickory Police Department was unable to find any record of any visit to the Hickory Pizza Hut. The Catawba County Sheriff's Department, likewise, had no record of any such visit.

4

for it. Hallman, p. 48. Coats testified that the group did not prepay at all, but received their pizza and ate it **before** paying. Coats, pp. 16, 20.

Miller testified that the request to prepay was "not a problem" and that the incident did not matter enough for him to have contacted Pizza Hut to follow up. Miller, pp. 140-142, 148. Williams, who testified that he "didn't think nothing of it," called the Pizza Hut Customer Service Hotline before leaving the Pizza Hut and spoke to a Pizza Hut regional vice president. Williams, pp. 31-32. Williams testified that he used the Hotline because he was "optimistic that maybe something would be done." Williams, p. 39. The regional vice president apologized for any inconvenience and asked if the group would wait for him to get there and talk to them in person. Williams, p. 40.[7] Williams responded they could not wait. Id.

Before plaintiffs left the Pizza Hut, the manager approached them and tendered their money back. Williams, p. 32. The regional vice president, the manager and the waitress all apologized to plaintiffs. Williams, p. 32. However, plaintiffs refused to accept the apologies or the refund and left. Williams, p. 41; Hallman, p. 44; Miller, p. 165. Coats testified that the four were "loud" and made comments to the manager when they left the restaurant. Coats, pp. 26-27, 37.

The next day, Williams received fifty dollars of gift certificates via federal express with a letter of apology from the Pizza Hut regional vice president. Williams, pp. 32-33. He has not redeemed the coupons. Williams, p. 42. Coats testified that sending the gift certificates

---

[7]Mr. Hallman testified that the Pizza Hut Customer Service Hotline constitutes a good customer service effort on the part of Pizza Hut. Hallman, p. 38.

was a good gesture by Pizza Hut. Coats, p. 48.

## II.    Plaintiffs' Alleged Injuries.

Plaintiffs' complaint seeks damages as compensation for their "economic loss, humiliation, embarrassment, emotional distress, mental anguish, and a deprivation of rights to make and enforce contracts on the same basis as whites." Complaint, ¶ 47. Plaintiffs testified that they have sustained neither physical injury nor economic loss. Williams, pp. 16, 55, 57; Hallman, pp. 67-68; Miller, p. 165. Plaintiffs claim damages only for their alleged mental distress. However, plaintiffs' deposition testimony clearly demonstrates that none of them suffered any such injury.

When asked in his deposition to describe the "humiliation and emotional distress" alleged in the complaint, Williams explained that now he feels "marked" and more sensitive to racist conduct. Williams, p. 52.[8] Williams further described his alleged emotional distress in terms of a change in his "perspective on white people," but did not describe any emotional distress, mental anguish or humiliation that he suffered. Williams, pp. 51-58.

Hallman testified that the alleged incident caused him to strive not to be perceived as a racist and that he now takes extra effort not to be a racist. He admitted that such a heightened

---

[8]Williams' Interrogatory Response regarding his claimed injuries states as follows:

Mr. Williams had never experienced racism or discrimination of which he was conscious until the day of this incident. Since the incident he is particularly wary of situations where discrimination may occur, and notices small instances of discrimination and racism which he had previously overlooked. The incident affected Mr. Williams in other ways about which he is ready and willing to testify at his deposition.

6

sensitivity is a positive attribute.[9]

A:     Well, it's– it's like I don't want to be racist, but since the incident I have been prone to make sure I'm not, put more of an effort to– I just don't want anyone to go through what we went through in any sort of manner.

Q:     . . . . And to the extent that you exercise that effort, you would agree that that's a positive thing, isn't it?

A:     I'd assume– yes. I'd assume so.

Hallman, pp. 59-63. Hallman's heightened sensitivity toward racism constitutes the entirety of his damages due to humiliation and emotional distress.

Q:     . . . . Other than paying attention to things more than you used to, is there any other claim of injury or damage attributable to this incident?

A:     Not that I can think of. I mean, I'm not sure– you mean emotional or any way?

Q:     Out of anything? Anything.

A:     Not that I know of. I don't believe so.

       . . .

Q:     Is there anything else you want to add about that other than what you've already told me?

_____

[9]Hallman's interrogatory response regarding his claimed injuries stated as follows:

For Plaintiff Clay Hallman prior to this incident, Mr. Hallman had not directly experienced racial discrimination. As a result of this incident, he is highly sensitive to discrimination, and notices small incidences of racism and discrimination where he had not noticed them before. Mr. Hallman now will not eat at any Pizza Hut restaurant and encourages others not to even though one of the restaurants is conveniently located on his college campus. Mr. Hallman was particularly embarrassed by the incident because he knew the other plaintiffs well, and as the only white member of their group at the restaurant, had to witness them suffer, solely because of their race, mistreatment by other white individuals. This matter affected Mr. Hallman in other ways about which he ready and willing to testify at his deposition.

7

A:    Other than me being embarrassed as being the only white person at the table to be a witness of it first hand, the discrimination by white– by the white people and that we're talking about on to everyone else and being associated with that on the opposite spectrum. 'Cause it's always– you-just being a witness to it all and being a white person associated– I'm not sure where I'm going with this one. But I know what I feel, but I can't put it into words, so I guess that– that doesn't help.

Q:    Well, now's your chance to put it into words.

A:    Uh-huh.

Q:    And I need to know. If you have another component of loss or injury that you're going to claim in this lawsuit as a result of that incident at the Pizza Hut, you need to tell me now.

A:    Just that I pay attention to what some of my some white– like, white people I work with or what not, the way they act towards people and I'm more– and I'm more prone to paying attention to what people do and just disgusted– I was prior to this, but I just– I guess that would probably be all. That would probably be all.

Hallman, pp. 65-67.

Miller testified that his embarrassment was limited to being embarrassed when the police came over to his table.[10]

Q:    Anything else about that incident that caused you embarrassment or

---

[10]Miller's interrogatory response regarding his claimed injuries states as follows:

Mr. Miller suffered severe embarrassment and humiliation during and after the incident. As he continues his work as a truck driver, he does not feel comfortable patronizing Pizza Hut restaurants while he is on the road or at home. This incident affected Mr. Miller in other ways, about which he is ready and willing to testify at his deposition.

Miller testified at his deposition that he had no problem eating at any Pizza Hut restaurant other than the one in which the incident occurred and, in fact, had frequented a Pizza Hut on Freedom Drive in Charlotte at least three times during the year prior to his deposition. Miller, pp. 156-158.

8

humiliation other than what you described?

A:  I was just embarrassed 'cause the officers came over. Now, if the manager would come by himself and said– and explain to us why he did it, it would have been different, but the way he called the police about us, that was embarrassing.

Q:  Okay.

A:  He didn't do it in a professional way. I'll put it that way.

Q:  And is it your testimony that their– he didn't give an explanation as to why he was doing it?

A:  No. I don't remember that.

Q:  All right. If he had given you an explanation, that would have been sufficient for you?

A:  I don't know. **I really wasn't paying him no attention**.

Miller, pp. 159-160. In his deposition testimony, Miller conceded that he did not have any continuing embarrassment or humiliation about the event, and that he had eaten at a Pizza Hut in Charlotte at least three times in the past year.

Q:  Then to the extent that that part of your answer talks about feeling uncomfortable patronizing Pizza Hut restaurants at home, it's fair to say that you don't feel uncomfortable– you don't feel so uncomfortable that you couldn't go to the Pizza Hut on Freedom; is that right?

A:  Yeah. I go to Pizza Hut on Freedom.

Q:  Okay. And that doesn't give you a problem?

A:  No.

Q:  And you don't feel uncomfortable there?

A:  Uh-uh.

    . . .

9

Q:      . . . [M]y question for you is are there other ways that the incident
        affected you causing either an injury or a loss that you need to tell me
        about?

A:      No.  Just humiliation; that's all.

Q:      That's it.

A:      Yeah; that's it.  I ain't goin' crazy over it.

Q:      . . . The humiliation you suffered is the humiliation you've described to
        me; correct?

A:      Yes.

Q:      And there's nothing else?

A:      Nothing else.

Miller, pp. 161-164.  Although plaintiffs contend that they suffered humiliation, mental

anguish and emotional distress, their deposition testimony demonstrates that they suffered no

such injuries.

## DISCUSSION

**I.      Standard for Summary Judgment**

        Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate

where there are no genuine issues as to any material facts and the moving party is entitled to

judgment as a matter of law.  The Fourth Circuit has articulated the summary judgment

standard as follows:

> A genuine issue exists 'if the evidence is such that a reasonable
> jury could return a verdict for the non-moving party.' Anderson
> v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91
> L.Ed.2d 202 (1986). . . . The party seeking has the initial
> burden to show absence of evidence to support the non-moving
> party's case. Celetex Corp. v. Catrett, 477 U.S. 317, 325, 106

> S.Ct. 2548, 91 L.Ed.2d 265 (1986). The opposing party must
> demonstrate that a triable issue of fact exists; he may not rest on
> mere allegations or denials, Anderson, 477 U.S. at 248, 106
> S.Ct. 2505. A mere scintilla of evidence supporting the case is
> insufficient. Id.

Patterson v. McLean Credit Union, 39 F.3d 515, 518 (4th Cir. 1994) (quoting Shaw v. Stroud,

13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24

(1994), 513 U.S. 814, 115 S.Ct. 68, 130 L.Ed.2d 24 (1994)). Plaintiffs have no evidence of

intentional discrimination or injury as required to recover under 42 U.S.C. § 1981 or 2000a.

When a claim of discrimination is made under 42 U.S.C. § 2000a, the Court applies an

analysis identical to that applied under 42 U.S.C. § 1981. In Harrison v. Denny's Restaurant,

Inc., 1997 WL 227963 (N.D.Cal. 1997) the court granted summary judgment on a claim

brought under 42 U.S.C. § 2000a. The court stated:

> Plaintiff also alleges that Denny's racially discriminated against
> him in violation of 42 U.S.C. Section 2000(a) [sic], which
> provides that [a]ll persons shall be entitled to the full and equal
> enjoyment of the goods, services, . . . without discrimination or
> segregation on the grounds of race, color, religion, or national
> origin.
>
> Summary judgment motions in 42 U.S.C. Section 2000(a) [sic]
> cases are governed by the same burden shifting provisions
> utilized in 42 U.S.C. Section 1981 cases. Hornick v. Noyes, 708
> F.2d 321 (7th Cir. 1983).
>
> Thus, having previously established that Denny's is entitled to
> summary judgment on plaintiff's claim of race discrimination
> brought pursuant to 42 U.S.C. section 1981, Denny's is similarly
> entitled to summary judgment on plaintiff's claim of race
> discrimination brought pursuant to 42 U.S.C. Section 2000(a)
> [sic].

1997 WL 227963, p.4 (Attached to Motion for Summary Judgment as Exhibit G). Because

plaintiffs' claim under § 1981 is defective for failure to make out a *prima facie* case (as discussed below), their claim under § 2000a is fatally deficient, as well.

## II. Plaintiffs Have No Credible Evidence of Intentional Discrimination as Required to Recover Under § 1981 or 2000a.

In order to establish a violation of § 1981 or 2000a, a plaintiff must offer proof of intentional or purposeful discrimination. General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Discrimination claims under §§ 1981 and 2000a are evaluated under the McDonnell Douglas proof scheme applicable to Title VII actions. Gairola v. Commonwealth of Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985). Under that approach, a plaintiff is obligated to establish a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If this burden is met, the employer may rebut the employee's evidence by offering evidence of a legitimate, non-discriminatory reason for the employment decision. Id. The employee may then demonstrate that the non-discriminatory reason offered by the employer was a mere pretext to disguise purposeful race discrimination. Id. at 804, 93 S.Ct. 1817.

Plaintiffs have no evidence, other than their own unsupported and speculative testimony, to show discriminatory intent. Plaintiffs do not claim discrimination based upon any practice, policy, custom or procedure employed by either Rage or Pizza Hut. See, Response to Defendants' Interrogatory No. 4. Rather, Plaintiffs contend that the **only** discriminatory conduct was the Pizza Hut manager's decision to contact the police. Response to Interrogatory No. 17; Complaint ¶ 40, 42. When asked in an Interrogatory to describe in

12

detail the discrimination they allegedly experienced at Pizza Hut, plaintiffs responded:

> Mr. White (the manager) and Lisa Smith (the waitress) contacted the police and caused the police to confront the plaintiffs with a demand for prepayment for food, a demand not made of white restaurant patrons not associated with black patrons. Mr. White and Ms. Smith undertook this action because of alleged criminal behavior by previous black patrons, who Mr. White and Ms. Smith knew had no connection with plaintiffs.

Response to Interrogatory No. 2. Plaintiffs' interrogatory response provides no evidence of discriminatory intent, other than plaintiffs' own unsupported and speculative opinion that the manager contacted the police because of their race. The full extent of plaintiffs' evidence of discriminatory intent is summarized by Hallman's testimony:

> Q:   . . . you indicate that the manager contacted the police and caused the police to demand prepayment for food. A demand not made of white restaurant patrons not associated with black patrons. What evidence do you have that that demand was not made of white restaurant patrons other than –
>
> A:   Other than previous experiences in a Pizza Hut, you know, other than never having to pay in advance before, none of us. Other than him saying the reason he was doing it was because the other black patrons ran out without asking or without paying their tab. **That's as far evidence as I have is that.** It's never happened to me before and his explanation of why.

Hallman, p. 55.

The only evidence pertaining to discriminatory intent, other than plaintiffs' speculative testimony, demonstrates the clear absence of such intent and contradicts plaintiffs' personal opinion that there was intentional discrimination. Coats, the fourth person seated at the table, testified that the manager's decision to call the police was not discriminatory at all. He testified that the police were called as a result of plaintiffs asking "what can we get free today"

13

and that the question may have alarmed the waitress. Coats, p. 44. According to Coats, the incident was not caused by plaintiffs' race, but **"could have happened to anybody."** Coats, p. 45.

Furthermore, the manager, Louis White testified that the four individuals came in acting suspiciously and appearing to be drunk. White, p. 7. Sometime prior to the incident, another Pizza Hut restaurant had been robbed and its manager shot. This prompted White to have concern for the safety of himself and the waitress and, together with plaintiffs' conduct and their request to purchase beer, led him to call the police. White, pp.7- 8. White testified he had no intent to discriminate against plaintiffs based on their race. White, p. 9, 22.[11]

In <u>Martin v. Airborne Express</u>, 16 F.Supp.2d 623 (E.D.N.C. 1996), aff'd, 155 F.3d 559 (4th Cir. 1998), defendant contended that plaintiff's § 1981 claim should be dismissed on summary judgment because plaintiff failed to present a *prima facie* case and, in the alternative, failed to rebut the legitimate, non-discriminatory reasons for the employment action that had been taken against plaintiff. The district court described the requirements for a *prima facie* case as follows:

> A *prima facie* case of discrimination consists of proof that the plaintiff is a member of a protected class, and that an adverse employment action was taken against the plaintiff in circumstances from which an inference of unlawful discrimination arises. An inference of discrimination is commonly raised in

---

[11]In defendants' interrogatories, plaintiffs were asked to identify all witnesses who might have knowledge to support their claim that defendants discriminated against them. Plaintiffs listed themselves, White, the waitress, Coats, and the police officers (whose identities remain unknown). Response to Interrogatory No. 1. All of these witnesses, except the waitress and the police officers, have been deposed. None of them offer any evidence of discriminatory intent.

Case 5:98-cv-00019-HM   Document 29   Filed 05/10/99   Page 14 of 27

these cases by proving disparate treatment. A plaintiff proves
disparate treatment by showing that he was treated less favorably
than similarly situated employees who are not in plaintiff's
protected class.

Martin, 16 F.Supp.2d at 630, quoting Johnson v. Legal Servs. of Ark., Inc., 813 F.2d 893

(8th Cir. 1987). The Martin court found that plaintiff fell within a protected class, but failed

to produce evidence giving rise to an inference of unlawful discrimination. "At no point does

[plaintiff] provide any factual support for his beliefs that racial bias influenced and, indeed,

dictated the policy making at AMR Distribution. Instead, he relies exclusively on his **personal**

**opinion** that race was a motivating factor in the varied employment decisions." Martin, 16

F.Supp.2d at 630.

> Without any concrete facts or evidence from which to draw
> inferences of intentional discrimination, the court holds that
> Martin has failed to meet his burden of creating a prima facie
> case. Although the prima facie burden is generally not an
> onerous one, Martin must offer more than conclusory assertions
> and unsupported speculation. Goldberg v. Green and Co., Inc.,
> 836 F.2d 845, 848 (4th Cir. 1988) (holding that plaintiff's "own
> naked opinion, without more, is not enough to establish a prima
> facie case"). His personal beliefs about the impropriety of certain
> conduct are not sufficient to generate a genuine issue of material
> fact.

Martin, 16 F.Supp.2d at 630.

In Goldberg v. Green and Co., Inc., 836 F.2d 845 (4th Cir. 1988), plaintiff filed an

ADEA claim against his former employer. The district court granted summary judgment on

the basis that plaintiff had produced no direct or circumstantial evidence of age discrimination

other than his own conclusory opinion. Recognizing that plaintiff was required to prove that

age was a determining factor in his termination, the Fourth Circuit affirmed.

15

To meet his burden under ordinary principles of proof, Goldberg
must produce direct evidence of a stated purpose to discriminate
and/or circumstantial evidence of sufficient probative force to
reflect a genuine issue of material fact. . . . As the district court
noted, Goldberg has failed, after having been afforded full
discovery, to produce any evidence of age discrimination.
Goldberg's own naked opinion, without more, is not enough to
establish a prima facie case of age discrimination. . . .
Conclusory assertions that Green's state of mind and motivation
are in dispute are not enough to withstand summary judgment.

836 F.2d at 848.

In a recent opinion, Allen v. Montgomery Ward & Co., Inc., 1:98CV7 (Mem. Opinion

and Order, March 3, 1999), the Western District granted summary judgment in a § 1981 case

in which plaintiff alleged that defendant detained her as a suspected shoplifter without probable

cause solely on account of her race. The evidence of record indicated that plaintiff had been

seen in the store associated with two other individuals who had actually shoplifted.

Recognizing the § 1981 requirement of "purposeful discrimination," the Court held that

plaintiff's showing that she was detained without probable cause did not make out a *prima facie*

case.

A lack of probable cause would not in and of itself establish the
purposeful discrimination required under the law. Absent any
facts from which a reasonable jury could find that the defendant
Montgomery Ward would probably not have apprehended and
accused the plaintiff had she been white, and in the absence of
any facts that the defendant Montgomery Ward had a policy of
detaining or preferentially accusing African-Americans of
shoplifting, the record does not support the required element of
purposeful discrimination for plaintiff's § 1981 claim. See, e.g.,
General Bldg. Contractors [Ass'n, Inc. v. Pennsylvannia, et. al.,
458 U.S. 375, 390 (1982)]; Davis v. Frapoly, 747 F.Supp. 451,
453 (N.D. Ill. 1980); Young v. Skaggs Drug Centers, Inc., 487
F.Supp. 1184, 1186-87 (E.D.Ark. 1980). Therefore, in this
case, the plaintiff's § 1981 claim fails, as a threshold matter, for

16

a lack of evidence of purposeful discrimination by the defendant
Montgomery Ward.

Allen, Mem. Opinion and Order, p. 4 (Attached as Motion for Summary Judgment as Exhibit
H).

Other courts agree that a plaintiff's conclusory, unsupported testimony of

discriminatory intent is insufficient to survive summary judgment in a § 1981 case. In Boykin

v. Bloomsberg University of Pennsylvania, 893 F.Supp. 400 (M.D.Pa. 1995), plaintiff was

charged with raping a university student. After DNA tests exonerated him, he filed suit

alleging that he was charged with the crime solely because of his race. The district court

dismissed plaintiff's §1981 claim on summary judgment, holding that plaintiff had presented

insufficient evidence that his race motivated the district attorney's conduct.

> Conclusory allegations of generalized racial bias do not establish
> discriminatory intent. Flag v. Control Data, 806 F.Supp. 1218,
> 1223 (E.D.Pa. 1992) (Katz, J.).
>
> The Boykins have presented nothing more than conclusory
> allegations that the race of Michael Boykin played a part in
> Kreisher's conduct. There is simply no evidence that the race of
> Michael Boykin was a factor in the conduct of Kreisher. We are
> of the view that Kreisher is entitled to summary judgment on
> count one of the Boykins' complaint.

Boykin, 893 F.Supp. at 406.

Here, plaintiffs have neither allegation nor evidence of any policy, custom or practice

by which Rage or Pizza Hut discriminated against them. See, Response to Interrogatory No.

4. Instead, plaintiffs contend that defendants' **only** discriminatory conduct was the manager's

decision to call the police. Id. Plaintiffs are required to come forward with some evidence

that a discriminatory animus motivated his decision. However, plaintiffs have presented

17

nothing more then their own unsupported and speculative testimony that the Pizza Hut manager acted with discriminatory intent.

Furthermore, plaintiffs have no evidence to overcome testimony of the Pizza Hut manager that he was reasonably concerned for his safety, given plaintiffs' behavior and a crime that had recently occurred at a nearby Pizza Hut. White, pp. 8-9. White's testimony establishes a legitimate, non-discriminatory basis for his decision to contact the police. As the Court noted in Martin, plaintiffs' inability to show that such a basis is a mere pretext is fatal to their claim.

> Even if Martin could satisfy this prong of the McDonell Douglas test, defendants have offered legitimate, non-discriminatory reasons for the employment decisions and Martin again has failed to respond by showing pretext. Accordingly, Martin's § 1981 claim fails as a matter of law.

16 F.Supp.2d at 631. Rage and Pizza Hut are entitled to summary judgment on plaintiffs' claim that defendants intentionally discriminated against them in violation of 42 U.S.C. §§ 1981 and 2000a.

## III. Plaintiffs Have Failed to Produce Evidence of Injury in the Form of Emotional Distress Cognizable Under 42 U.S.C. § 1981 or 2000a.

Plaintiffs' deposition testimony of their emotional distress can be summarized as follows:

| | |
|---|---|
| Williams: | Increased suspicion of whites; |
| Miller: | Embarrassment when police approached his table, although he did not pay much attention to them while they were there; |
| Hallman: | Heightened sensitivity to discrimination, which is a positive attribute. |

Plaintiffs have no actual injury that is actionable under § 1981 or 2000a.

18

A § 1981 plaintiff must present evidence of actual injury before recovering compensatory damages for mental distress. Gunby v. Pennsylvania Elec. Co., 840 F.2d 1108 (3rd Cir. 1988), citing Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (compensatory damages recoverable in § 1983 actions); Spence v. Board of Education of Christina School District, 806 F.2d 1198, 1200 (3rd Cir. 1986) (emotional distress damages may not be presumed in First Amendment action); Ramsey v. American Air Filter Co., 772 F.2d 1303, 1313 (7th Cir. 1985) ("competent evidence" must support award for compensatory damages in § 1981 action); Erebia v. Chrysler Plastics Products Corp., 772 F.2d 1250, 1259 (6th Cir. 1985), cert. den., 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986) ("there must be sufficient evidence to support the award"); Block v. R.H. Macy and Co., 712 F.2d 1241, 1245 (8th Cir. 1983) (damages for mental anguish awardable where supported by evidence including sleeplessness, anxiety, embarrassment, and depression).

> Although it is necessary in § 1981 and Title VII cases that compensatory damages be provided, speculative damages will not be awarded. The courts have allowed recovery under § 1981 for emotional distress, but there must be sufficient evidence to support the award.

Gunby, 840 F.2d at 1121.

In Gunby, plaintiff's evidence of emotional distress in a § 1981 action against his employer was very similar to that presented by plaintiffs in this case.

> On direct examination, Gunby testified that he told Gallatin that 'I had been done wrong' and that 'I have been treated unfairly.' Gunby also testified that he felt he 'had been treated unjustly and that [he] was going to contest [the successful applicant's] qualifications.' . . . Additionally, Gallatin on direct re-examination testified that Gunby was 'very upset' when informed of Penn Electric's decision not to interview him for the Altoona

19

> position. Gunby, however, offered no specific evidence of
> emotional distress related to his being passed over for the
> managerial job that went to Hager.

Gunby, 840 F.2d at 1120. Based upon that evidence, the Third Circuit concluded that Gunby

had presented no evidence upon which a jury could reasonably have concluded that he had

suffered emotional distress. The court further rejected Gunby's contentions that emotional

distress damages should be presumed. "The justifications that support presuming of damages

in defamation cases do not apply in § 1981 and Title VII cases. Damages do not follow of

course in § 1981 and Title VII cases . . . ." Gunby, 840 F.2d 1121. Because Gunby presented

no evidence that he suffered emotional distress as a result of his being passed over for the

promotion, the Third Circuit set aside the verdict for emotional distress. Id.

The Fourth Circuit, in a § 1983 case, has recognized that while compensatory damages

for emotional distress are available under statutes such as §§ 1981 and 1983, such damages

may not be presumed, but must be proven by competent and sufficient evidence. Furthermore,

a plaintiff's failure to succeed in establishing "actual injury" based on sufficient evidence

typically results in the award of only nominal damages. Price v. City of Charlotte, 93 F.3d

1241 (4th Cir. 1996), citing Ramsey v. American Air Filter Co., 772 F.2d 1303, 1313 (7th

Cir. 1985) (noting the paucity of evidence in reviewing damages for a § 1981 claim based on

emotional distress and noting further that the proffered evidence was so general and vague that

remittitur was required); Cohen v. Board of Education, 728 F.2d 160, 162 (2nd Cir. 1984)

(holding that a claim of emotional distress supported only by plaintiff's testimony could not

support an award of "substantial damages"); Dougherty v. Barry, 604 F.Supp. 1424, 1443

(D.D.C. 1985) (ruling that damages for emotional distress based on a constitutional violation

20

could not be awarded for want of exactitude).

> . . . The case law reveals that courts scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony. . . . If, as in the instant appeal, the injured parties provide the sole evidence of mental distress, they must reasonably and sufficiently explain the circumstances of their injury and not resort to mere conclusory statements, . . . and seriatim recitations of depression or hurt feelings as evidence of emotional distress offered by the plaintiff fail to meet this standard. . . . Thus, while a plaintiff's testimony, standing alone, can support an award of compensatory damages, the evidence of emotional distress must be demonstrable, genuine, and adequately explained.

Price, 93 F.3d at 1251 (citations omitted). Accordingly, the Fourth Circuit reversed the verdict awarding damages for emotional distress based on the insufficiency of plaintiff's testimony.

> . . . Officer Holl testified that he felt betrayed, embarrassed and degraded and passed over. . . . Officer Corwin . . . testified that he 'guessed' he felt 'betrayed,' 'disappointed and embarrassed,' explaining that he 'wasn't aware that race was going to play any part' in the promotions practice. . . . In a like vein, Officer Elstrom testified that he felt 'devastated' by the city's perpetrating its deceit, explaining that he felt 'used as a pawn' and 'betrayed, lied to, used. . . .'
>
> We conclude that appellees' evidence fails to show 'genuine injury' evidenced by 'nature and circumstances of the wrong and its effect. . . . [W]e are confronted with the bald, conclusory assertions that appellees felt betrayed and deceived, but there was no evidence concerning any demonstrable injuries suffered. Such vague conclusory statements do not constitute sufficient evidence, . . . and we reverse the compensatory damages awards. . . .

Price, 93 F.3d at 1254, 1255. The Fourth Circuit, in reversing the compensatory damages awards, awarded plaintiffs nominal damages in the sum of one dollar each. Id. See also,

Bennun v. Ruckers, 737 F.Supp. 1393 (D.N.J. 1990) (denying any compensatory or other

21

relief available under § 1981 to plaintiff who failed to credibly establish emotional or mental harm).

## IV. Plaintiffs Have Failed to Produce Evidence to Support Their Claim for Punitive Damages.

"Not every action under § 1981 warrants an award of punitive damages." Lowry v. Circuit City Stores, Inc., 158 F.3d 742 (4th Cir. 1998), citing Stephens v. South Atlantic Canners, Inc., 848 F.2d 484, 489 (4th Cir. 1988), Johnson v. Railway Express Agency, 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

> Punitive damages are only recoverable for conduct exhibiting malice, an evil motive, or recklessness or callous indifference to a federally protected right. . . . It is an extraordinary remedy, designed to punish and deter particularly egregious conduct. . . . Although any form of discrimination constitutes reprehensible and abhorrent conduct, not every lawsuit under § 1981 calls for submission of this extraordinary remedy to a jury.

Lowry, 158 F.3d at 765. Accordingly, a plaintiff who proves a cause of action under § 1981 may recover punitive damages when the plaintiff is entitled to an award of compensatory damages and only under circumstances where "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Beauford v. Sisters of Mercy-Province of Detroit, 816 F.2d 1104 (6th Cir. 1987) (citations omitted).

In Interrogatory No. 17, defendants asked plaintiffs "to describe each act of defendants . . . or any officer, manager, or employee of either defendant that you believe entitles you to punitive damages." Plaintiffs responded as follows:

> In particular, the plaintiffs believe that Mr. Louis J. White's contacting of the police in order to communicate a discriminatory

22

> demand to the plaintiffs, based on behavior of other individuals
> which Mr. White attributed to plaintiffs Williams and Miller
> solely on the basis of their race, and without ever communicating
> the demand to the plaintiffs directly, warrants punitive damages.

The response constitutes the full extent of plaintiffs' evidence supporting their punitive damages claim. Plaintiffs have failed to produce evidence showing the egregious conduct, willfulness or malice on the part of defendants that is required to support an award of punitive damages. Plaintiffs contend only that the Pizza Hut manager called the police and that they were asked to prepay based on their race because three black men had run out without paying the week before. See, Response to Interrogatory No. 17. Without more, such evidence does not rise to a level sufficient to warrant an award of punitive damages.

## V. Plaintiffs Have No Evidence That Rage Was Involved in the Conduct Alleged in the Complaint.

Plaintiffs allege in their complaint that Rage owns the Hickory Pizza Hut. Complaint, ¶ 11. Plaintiffs then contradict that allegation by alleging that "Defendant Pizza Hut of Hickory No. 2, Inc. owns and Defendant Rage, Inc. operates the Pizza Hut restaurant located at 2321 North Center Street, Hickory, North Carolina, 28601." Complaint, ¶ 13 (emphasis added). Plaintiffs have failed to present evidence that addresses either of the inconsistent allegations and, according to the undisputed evidence of record, summary judgment should be granted dismissing Rage.

Rage is a Tennessee corporation with no employees in Hickory, North Carolina. Affidavit of Richard Stephenson, ¶ 4, 5 (Exhibit I). Pizza Hut is a North Carolina corporation. Stephenson Aff't, ¶ 6. Pizza Hut and Rage are separate corporations and all persons who were working at the Pizza Hut on March 2, 1995 were employees of Pizza Hut.

23

Stephenson Aff't, ¶ 7, 8.

Plaintiffs have failed to show that any employee or agent of Rage had any involvement in the allegedly discriminatory conduct described in the complaint. For example, in Interrogatory No. 2, defendants asked plaintiffs to describe the discriminatory conduct committed against them by any officer, manager, or other employee of Pizza Hut or Rage. Plaintiffs responded only that Louis White and Lisa Smith, employees of Pizza Hut, discriminated against them.[12] Defendants further asked plaintiffs to identify all evidence of any practice, policy, custom or procedure by which they contend they were discriminated against. Plaintiffs responded as follows:

> The plaintiffs are not aware of any practice, policy, custom or procedure by which they were discriminated against. The plaintiffs contend that the discrimination against them was the result of discriminatory decision making by the manager of the restaurant.

Response to Interrogatory No. 4. Finally, defendants asked plaintiffs to describe any evidence supporting their claim for punitive damages against either Pizza Hut or Rage. Again, plaintiffs responded by citing only the conduct of White, a Pizza Hut employee, in contacting the police. Response to Interrogatory No. 17. Plaintiffs have evidence only that an employee of Pizza Hut, not Rage, was involved in the alleged discrimination. Furthermore, plaintiffs have no evidence to overcome the evidence of record, in the form of the Stephenson affidavit, that the two corporations are separate entities.

In summary judgment, "the opposing party must demonstrate that a triable issue of fact

---

[12]In deposition, it became clear that plaintiffs had no complaint with the conduct of the waitress, but focused only on White's alleged conduct.

exists; he may not rest on mere allegations or denials." <u>Patterson v. McLean Credit Union</u>, 39 F.3d at 518. See, <u>Richard v. Bell Atlantic Corp.</u>, 946 F.Supp. 54 (D.C.D.C. 1996) (where complaint contained no allegations detailing any integrated relationship between alleged parent company and its subsidiaries, motion to dismiss granted); <u>Thomas v. St. Luke's Health Systems, Inc.</u>, 869 F.Supp. 1413 (N.D.Iowa 1994) (employee failed to state claim of race discrimination against employer's alleged parent corporation, absent any allegations of facts contrary to parent corporation's allegations that it was a separate corporation from the employer and that parent corporation was never employee's employer).

There is no evidence that any employee or officer of Rage was involved in the conduct alleged in the Complaint. Furthermore, there is no evidence of any policy, procedure or relationship by which Rage contributed to the alleged discriminatory conduct. In fact, plaintiffs concede that they do not base their claim of discrimination on the existence of any such practice, policy, custom or procedure. Because plaintiffs have no evidence to support their claims against Rage, summary judgment in favor of Rage is appropriate.

## CONCLUSION

Based on the foregoing, Defendants Rage, Inc. and Pizza Hut of Hickory No. 2, Inc. respectfully request that summary judgment be granted in their favor as to all claims by plaintiffs in this action or, in the alternative, that summary judgment be granted dismissing plaintiffs' claims for punitive damages and dismissing the claims asserted against defendant Rage, Inc.

25

This the 10th day of MAY , 1999.

_____
Norwood Robinson
Gray Robinson
John N. Taylor, Jr.
Attorneys for Defendants

OF COUNSEL:

ROBINSON & LAWING, L.L.P.
370 Knollwood Street, Suite 600
Winston-Salem, NC 27103
Telephone: (336) 631-8500
Telecopy: (336) 631-6999

26

## CERTIFICATE OF SERVICE

I, John N. Taylor, Jr., hereby certify that on this date I served a copy of the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR**

**SUMMARY JUDGMENT** upon all counsel of record by placing a copy of the same in the

United States mail in a prepaid envelope addressed as follows:

> Jay Ferguson, Esq.
> Ferguson Stein, et al.
> Suite 300 Park Plaza Building
> 741 Kenilworth Avenue
> P.O. Box 36486
> Charlotte, NC 28236-6486

This the 10ᵗʰ day of May, 1999.

John N. Taylor, Jr.
Attorney for Defendants

OF COUNSEL:

ROBINSON & LAWING, L.L.P.
370 Knollwood Street, Suite 600
Winston-Salem, North Carolina 27103-1835
Telephone: (336) 631-8500
Telecopy: (336) 631-6999