IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:98CV19-McK

CLAY HALLMAN, DEREK MILLER, )
and CHRISTOPHER WILLIAMS, )
        Plaintiff, )
)
v. ) ORDER
)
RAGE, INC., and )
PIZZA HUT OF HICKORY No.2, INC. )
        Defendants. )
)

THIS MATTER is before the court with the consent of the parties for ruling upon Defendants' motion for summary judgment and alternative motions for summary judgment dismissing punitive damages and to dismiss all claims against Defendant Rage, Inc. (Doc. 28.)

I.   Factual and Procedural Background

This is a race discrimination claim. As this is a summary judgment motion brought by Defendants, this court must view all facts and inferences in the light most favorable to the Plaintiff. This court will review the facts according to this standard.

On March 2, 1995, Plaintiffs were employed by Armstrong Relocation Company, a moving company located in Charlotte. (Doc. 28, ex. A, p. 23.) At approximately 2:30pm, after loading their truck with furniture to be moved from Hickory to Atlanta, the Plaintiffs, accompanied by co-worker David Coats, entered a Pizza Hut restaurant located in Hickory, North Carolina. (Id., p. 26.) The Pizza Hut, which is owned and operated by Defendant Pizza Hut

of Hickory, Inc. was staffed by the shift manager, Louis White, and a waitress, Lisa Starnes[1]. (Doc. 29, ex. I, p. 37.) Plaintiffs and Mr. Coats were seated by the waitress who took their drink and pizza orders. (Id., p. 29, 37.) The drinks arrived shortly thereafter. While waiting thirty-forty minutes for their pizza, they observed white patrons enter the restaurant and receive carry-out orders of food. (Id., p. 29.; Doc. 1, para. 37-39.) Plaintiffs and Mr. Coats were "cracking jokes" and "teasing" the waitress and asked her "what can we get here free today." (Id., p. 33.)

Before the pizza arrived, Mr. White instructed the waitress, Ms. Starnes, to call the police about Plaintiffs because they were "suspicious" and two police officers responded to the call and entered the Pizza Hut. (Id. p. 29.) The police officers, accompanied by the store manager who summoned them, approached their table and one of the officers requested that their group pay for their food before receiving it. (Id.) It is undisputed that this Pizza Hut does not require prepayment of food. The Plaintiffs did pay for their food prior to receiving it, and ultimately received and ate it. (Doc. 32, ex. A, p. 31, 35.) Further, there is evidence that the manager told the Plaintiffs that he made them prepay for their food because he had several black customers run out without paying the day before. (Id., ex. A, p. 30.)

---

[1] Plaintiffs Miller and Williams are black. Plaintiff Hallman is white. David Coats, who was with Plaintiffs but did not choose to file suit, is black. White is white, as is Starnes.

2

One of the officers handed Plaintiff Williams a card with a Pizza Hut customer service hotline number if they had a complaint. (Id., p. 31.) Mr. Williams called the number before leaving the restaurant and spoke to Edward Weames who took down Williams' information, issued him a case number, and apologized to the him about the situation. (Id.) After their pizza arrived, the manager called Mr. Williams to come to the telephone to speak to another Pizza Hut employee, Don Pollan, who was presumably called by Mr. Weames. (Id., p. 32.) Mr. Pollan apologized for manager White's "wrong judgment" and asked to meet with the Plaintiffs if they could wait two hours for him to drive there but Plaintiffs had to leave to finish moving the furniture. (Id.) Mr. Pollan then apparently instructed manager White to return their money (which Plaintiffs did not take) and the next day, Mr. Pollan sent a letter of apology along with $50.00 in coupons or food certificates to Mr. Williams. (Id., p. 32, 33.)

The evidence presented regarding Plaintiffs' injuries is as follows: Mr. Hallman, in deposition testimony, discusses how humiliated and embarassed he felt about the incident at the time it occurred and afterward, and how it has changed his life. (Doc. 32, ex. 2, p. 57-67.) He states that he is "paranoid about...getting discriminated against" and is "..more or less terrified for myself...see, I don't want to be considered a racist" and he acknowledges that he "pay[s] attention to more things.. than I used

3

to" with regard to discriminatory conduct by others around him. (Id., p. 60.) Mr. Miller likewise describes embarrassment at the incident, that "[t]hey made it seem like we did something, you know.. .paying before we ate. We never had that happened [sic] before, you know. You go anywhere now and you eat before you pay. I never had that happened [sic.] (Doc. 32, ex.3, p. 159.)

Mr. Williams describes how he has suffered as a result of the incident stating that the incident was "...one of the most degrading things that happened to me in my life. Matter of fact that is the most degrading thing in my life". (Doc. 32, ex. 6, p. 41.) He states that he no one had ever called the police on him and it scared him to imagine what could result, stating that it "was a scary moment and I started thinking that we are marked and that at any given time that if somebody give an officer the go ahead maybe I could be going to jail or I could be getting harassed for something I ain't done." (Id.) He added that with his background, the incident was more affecting, stating "That's all I grew up around was, you know, white people. All my friends were white, you know, most of them and we spent the night at each other house and played. . . but now I just -- I think too much of it ..it's like every time I feel that someone white is doing something to me its because I'm black, you know, and I never did used to feel that way." (Id., p.54-55.)

**II. Analysis**

4

## I. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, responses to discovery, and the record reveal that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The party moving for summary judgment has the initial burden of showing that no genuine issue of any material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its burden, the non-moving party must come forward with specific facts showing that evidence exists to support its claims and that a genuine issue for trial exists. Id.; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see Fed. R. Civ. P. 56(e) (in response to motion for summary judgment, "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). When considering motions for summary judgment, courts must view facts and inferences in the light most favorable to the party opposing the motion for summary judgment. Matsushita, 475 U.S. at 587-88; United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When, however, the evidence from the entire record could not lead a rational fact-finder to find for the non-moving party, no genuine

5

issue for trial exists and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### A. Purposeful Discrimination

#### 1. Section 1981 claim

When bringing claims of racial discrimination under §§1981 and 2000a, a plaintiff must make out *a prima facie* case of discrimination. McDonnell Douglas v. Green, 411 U.S. 792, 802,1093 S.Ct. 1817, 36 L.E.2d 668 (1973). If the plaintiff satisfies this requirement, then the defendant must rebut plaintiff's showing through the presentation of evidence of a legitimate and non-discriminatory reason for the defendant's actions. Id. The plaintiff then has the burden of proving that the reason offered by the defendant is pretextual, and that the defendant is actually engaged in intentional discrimination. Id. at 804. More specifically, with regard to a §1981 claim:

> the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute; in this case, the making and enforcing of a contract.

Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (7th Cir. 1997).

Under §2000a, a plaintiff must show that the Defendants: (1) owned and operated a restaurant affecting commerce; (2) owned and operated a restaurant that is a public accommodation; and (3) denied plaintiffs full and equal enjoyment of the restaurant. Wooten v. Moore, 400 F. 2d 239, 241-42 (4th Cir. 1968) cert denied,

6

393 U.S. 1083.

Additionally, the doctrine of respondeat superior applies in §1981 claims. <u>Springer v. Seamen</u> 821 F. 2d 871, 881 (1st Cir. 1987). An employee may subject an employer to liability under this doctrine only for those intentional wrongs of his employees that are committed in furtherance of the employment; the tortfeasing employee must think (however misguidedly) that he is doing the employer's business in committing the wrong." <u>Fitzgerald v. Mountain States Tel. and Tel.</u>, 68 F. 3d 1257, 1262-63 (10th Cir. 1995). An employer will not be liable under this doctrine unless "the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy. <u>EEOC v. Gaddis</u>, 733 F. 2d 1373, 1380 (10th Cir. 1984). Although it is alleged that his reasons for fearing theft grew out of racial stereotyping and illegal racial classification, it is undisputed that Mr. White is the manager of the restaurant and was acting to prevent stealing and protect the safety of the workers he supervised. Therefore, under this doctrine, Defendants are responsible for any racially discriminatory behavior.

With regard to the § 1981 claim, it is undisputed that Mr. Miller and Mr. Williams are African-American and part of a protected class. Mr. Hallman is also part of the protected class

7

because it is alleged that he suffered discrimination arising out of his association with the other plaintiffs. <u>Fiedler v. Marumsco Christian School</u>, 631 F.2d 1144, 1149 (4th Cir. 1980).

A reasonable jury could infer Defendants' intent to discriminate from several facts in the record. First, Mr. White's reaction to the presence of Plaintiffs in the restaurant and his characterization of Plaintiffs as "suspicious", when they were allegedly engaged in no questionable conduct, could raise an inference of intentional discrimination. Mr. White took the extreme measure of calling the police, and joining with them to demand prepayment from Plaintiffs for food. There is evidence that by taking these steps, Mr. White treated Plaintiffs differently than other customers. Finally, there is evidence that Mr. White explicitly stated his intent to discriminate by explaining that he was essentially holding Plaintiffs accountable for a crime committed by other African-Americans.

A reasonable jury could conclude that the prepayment demand and other disparate treatment meant that Plaintiffs were not allowed to contract on the same basis as other Pizza Hut customers solely because of their race. Together, this evidence shows that there is a genuine issues of material fact as to this claim. Accordingly, Defendants' motion for summary judgment as to this claim should be denied.

**2. Section 2000a claim**

8

These same facts support the §2000a claim. Defendants have not claimed that the restaurant does not affect commerce or that it is not a public accommodation. This leaves only the issue of whether Plaintiffs were denied the full and equal enjoyment of the facility. Under these facts, a jury could find that Plaintiffs were treated differently than other restaurant customers because of their race, and therefore could not fully and equally enjoy the restaurant.

Defendants argue that the non-discriminatory reason for their treatment of Plaintiffs is that they acted drunk and suspiciously. This reason is not supported by credible evidence in the record. Mr. White is the only witness who testifies to this and not only is his account internally inconsistent, it is contradicted by the statements of every other available witness. According to her affidavit, Mrs. Starnes has no doubt that Plaintiffs did not act suspiciously or drunk. This, coupled with Mr. White's own admissions regarding the previous black customers, belies the claim that Defendants' reasons are not pretextual.

### C. Plaintiff's Claimed Injuries

Defendants further argue that Plaintiffs have not clearly articulated injuries sufficient to support a claim for emotional distress which is cognizable under 42 U.S.C. §1981 or 2000a. After reviewing all of the evidence that has now been submitted for summary judgment, it appears that the only evidence of injury is

9

Plaintiffs' own testimony that their injuries include embarrassment, humiliation, and changes in personal outlook and behavior which arose from this incident and which still affect them today. Plaintiffs have not claimed or offered any evidence of their need for therapy or counseling, any need for medication, or any loss of income or pecuniary expense. Further, they have not offered any corroboration of the distress or any manifestation of symptoms it may have assumed.

The Fourth Circuit has recognized that compensatory damages are available under statutes such as §§ 1981 and 1983 if they are proven by competent and sufficient evidence. Price v. City of Charlotte, 93 F.3d 1241 (4th Cir. 1996). Additionally, in Price, the Fourth Circuit held that "a plaintiff's testimony, standing alone, may support a claim of emotional distress precipitated by a constitutional violation." Id. at 1251. Such a claim may give rise to a compensatory damage award. Given this caselaw, this court finds that a reasonable jury could draw an inference from the testimony presented here that Plaintiffs' injuries are compensable. Accordingly, Defendants' motion for summary judgment as to the claim for emotional distress should be denied.[2]

---

[2] However, this testimony, while sufficient to survive a summary judgment motion, may not support compensatory damages at trial or may subject the claim to a nominal damages award. A review of the Fourth Circuit's decision in Price teaches that a plaintiff's failure to succeed in establishing "actual injury" based on sufficient evidence typically results in the award of only nominal

**D. Punitive Damages**

Defendants also argue that Plaintiffs have not produced sufficient evidence to support their claim for punitive damages and make an alternative motion for summary judgment dismissing the punitive damages claim.

It is clear that "[n]ot every action under §1981 warrants an award of punitive damages." Lowry v. Circuit City Stores, 158 F. 3rd 742 (4th Cir. 1998), citing Stephens v. South Atlantic Canners, Inc., 848 F. 2d 484, 489 (4th Cir. 1988), Johnson v. Railway Express, 421 U.S. 454, 459 (1975).

Punitive damages are recoverable for conduct exhibiting

---

damages. In Price, non-minority police officers sued the city contending that the race-based promotions policy violated the equal protection clause. The officers offered only their own testimony that they felt "embarrassed", "betrayed", "degraded", "passed over", "devastated", and "disappointed". Price, 93 F.3d at 1255. Although the jury awarded $3000.00 to each officer in compensatory damages for emotional distress, the Fourth Circuit reversed the jury's compensatory damages award and awarded each plaintiff $1.00 in nominal damages. The Court noted that there was no evidence of the need for medication, physical symptoms, psychological disturbance or counseling, loss of income or pecuniary expense, a description of the emotional distress, or how their conduct changed or if others observed the conduct change. Id. Further, there was no corroboration by other witness of the distress or any manifestation it may have assumed. Id. Citing a host of cases from other circuits, the Fourth Circuit held that the award could not stand because the evidence consisted of "bald,. . . vague, conclusory statements [which] do not constitute sufficient evidence" of "demonstrable" emotional injury. Id. The Court found that Plaintiffs were entitled to recover compensatory damages for demonstrable emotional distress but found that they failed to offer sufficient proof of emotional distress at trial to support the award.

11

> malice, an evil motive, or recklessness or callous indifference to a federally protected right. . . . It is an extraordinary remedy, designed to punish and deter particularly egregious conduct. . . Although any form of discrimination constitutes reprehensible and abhorrent conduct, not every lawsuit under §1981 calls for submission of this extraordinary remedy to the jury.

Lowry, 158 F. 3d at 765. Accordingly, a Plaintiff who proves a cause of action under §1981 may recover punitive damages when the plaintiff is entitled to an award of compensatory damages and only under circumstances where the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally-protected rights of others.

In Interrogatory 17, Defendants asked Plaintiffs "to describe each act of defendants. . . or any officer, manager, or employee of either defendant that you believe entitles you to punitive damages." Plaintiffs responded:

> In particular, the plaintiffs believe that Mr. Louis J. White's contacting of the police in order to communicate a discriminatory demand to the plaintiffs, based on behavior of other individuals which Mr. White attributed to plaintiffs Williams and Miller solely on the basis of their race, and without ever communicating the demand to the plaintiff's directly, warrants punitive damages.

(Doc. 28, ex. F.)

Plaintiffs' Response asserts two additional bases for punitive damages. First, they argue that Mr. White never received a reprimand for his conduct. However, the evidence indicates that Mr. White had at least two discussions with supervisors about the

12

incident. (Doc. 33, ex. C.) The evidence further indicates that before the Plaintiffs left the restaurant, Mr. White had talked to his supervisor and had been instructed to return to the table and offer the money back. (Doc. 33, ex. D.)

Second, Plaintiffs cite defense counsel's argument that Plaintiff Hallman's increased sensitivity to racial issues is not necessarily a negative outcome, that it actually might have been a good thing. Plaintiffs contend that this argument presented by defense counsel proves Defendant's reckless indifference to human rights. The undersigned does not agree. Plaintiffs' claims arise out of Mr. White's alleged conduct over four years ago. An argument by a defense attorney is not an appropriate basis for awarding punitive damages.

Taken together, this evidence simply does not show any egregious conduct, wilfulness, or malice, on the part of Defendants as is required to support the "extraordinary remedy" of an award of punitive damages. There is no evidence that Mr. White's actions were condoned or encouraged by Defendants nor is there evidence of any policy allowing or condoning this type of behavior. In fact, there is evidence that Defendants immediately tried to mitigate the situation. As noted above, the remedy of punitive damages was designed to punish and deter conduct. Where there is no evidence that Defendants have themselves engaged in this conduct, nor have they encouraged or condoned it, there is no need for punishment or

13

deterrence and the remedy of punitive damages is inappropriate. Accordingly the motion for summary judgment as to punitive damages should be granted.

### E. Claims as to Defendant Rage, Inc.

Lastly, Defendants argue that Plaintiffs have failed to show that Defendant Rage was involved in the conduct alleged in the complaint and make an alternative motion to dismiss all claims against Rage, Inc. Plaintiffs allege in their complaint that Rage owns the Hickory Pizza Hut. (Doc. 1, ¶ 11.) Plaintiffs then contradict that allegation by alleging that "Defendant Pizza Hut of Hickory No. 2, Inc. <u>owns</u> and Defendant Rage, Inc. <u>operates</u> the Pizza Hut restaurant located at 2321 North Center Street, Hickory, North Carolina, 28601." (Doc. 1, ¶ 13)(emphasis added). Plaintiffs have failed to present evidence that addresses either of the inconsistent allegations.

Rage is a Tennessee corporation with no employees in Hickory, North Carolina. (Doc. 28, ex. I, ¶ 4, 5.) Pizza Hut is a North Carolina corporation. (<u>Id.</u>, ¶ 6.) Pizza Hut and Rage are separate corporations and all persons who were working at the Pizza Hut on March 2, 1995 were employees of Pizza Hut. (<u>Id.</u>, ¶ 7, 8.)

Plaintiffs have failed to show that any employee or agent of Rage had any involvement in the allegedly discriminatory conduct described in the complaint. Further, they did not address this argument in their response in opposition to summary judgment and

14

appear to have abandoned this issue.

At summary judgment, "the opposing party must demonstrate that a triable issue of fact exists; he may not rest on mere allegations or denials." Patterson v. McLean Credit Union, 39 F. 3d at 518. See, Richard v. Bell Atlantic Corp., 946 F. Supp. 54 (D.C. Cir. 1996) (where complaint contained no allegations detailing any integrated relationship between alleged parent company and its subsidiaries, motion to dismiss granted); Thomas v. St. Luke's Health Systems. Inc., 869 F.Supp. 1413 (N.D.Iowa 1994) (employee failed to state claim of race discrimination against employer's alleged parent corporation, absent any allegations of facts contrary to parent corporation's allegations that it was a separate corporation from the employer and that parent corporation was never employee's employer).

There is no evidence that any employee or officer of Rage was involved in the conduct alleged in the Complaint. Furthermore, there is no evidence of any policy, procedure or relationship by which Rage contributed to the alleged discriminatory conduct. In fact, Plaintiffs concede that they do not base their claim of discrimination on the existence of any such practice, policy, custom or procedure. Because Plaintiffs have no evidence to support their claims against Rage, summary judgment in favor of Rage is appropriate.

### III. Conclusion

15

Based upon the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment is **DENIED**. The alternative motion for summary judgment regarding punitive damages is **GRANTED** and the alternative motion for summary judgment regarding all claims against Defendant Rage is **GRANTED**.

Additionally, given the rulings of this order and bearing in mind the narrowed universe of possible outcomes at trial, the parties are **ORDERED** to attempt again to settle this matter prior to trial. Trial is set for the July 19, 1999 term and therefore, the parties shall file a joint statement regarding settlement progress by July 9, 1999. To facilitate this process, this order will be faxed to the parties immediately upon signing in addition to the usual notification by mail.

**IT IS SO ORDERED.**

This 29th day of June, 1999.

_____
H. BRENT McKNIGHT
UNITED STATES MAGISTRATE JUDGE

United States District Court
for the
Western District of North Carolina
July 2, 1999

* * MAILING CERTIFICATE OF CLERK * *

Re: 5:98-cv-00019

True and correct copies of the attached were mailed by the clerk to the following:

    James E. Ferguson III, Esq.
    Ferguson, Stein, Wallas, Gresham & Sumter, P.A.
    P. O. Box 36486
    741 Kenilworth Ave., Suite 300
    Charlotte, NC 28236-6486

    Norwood Robinson, Esq.
    Robinson & Lawing, L.L.P.
    370 Knollwood St.
    Suite 600
    Winston-Salem, NC 27103-1834

    J. Gray Robinson, Esq.
    Robinson & Lawing, L.L.P.
    370 Knollwood St.
    Suite 600
    Winston-Salem, NC 27103-1834

```
cc:
Judge                       ( )
Magistrate Judge            ( )
U.S. Marshal                ( )
Probation                   ( )
U.S. Attorney               ( )
Atty. for Deft.             ( )
Defendant                   ( )
Warden                      ( )
Bureau of Prisons           ( )
Court Reporter              ( )
Courtroom Deputy            ( )
Orig-Security               ( )
Bankruptcy Clerk's Ofc.     ( )
Other_____      ( )
```

Date: 7/2/99

Frank G. Johns, Clerk
By: _____

United States District Court
for the
Western District of North Carolina
July 7, 1999

cbb

* * MAILING CERTIFICATE OF CLERK * *

Re: 5:98-cv-00019

True and correct copies of the attached were mailed by the clerk to the following:

James E. Ferguson III, Esq.
Ferguson, Stein, Wallas, Gresham & Sumter, P.A.
P. O. Box 36486
741 Kenilworth Ave., Suite 300
Charlotte, NC 28236-6486

Norwood Robinson, Esq.
Robinson & Lawing, L.L.P.
370 Knollwood St.
Suite 600
Winston-Salem, NC 27103-1834

J. Gray Robinson, Esq.
Robinson & Lawing, L.L.P.
370 Knollwood St.
Suite 600
Winston-Salem, NC 27103-1834

cc:
Judge                      ( )
Magistrate Judge           ( )
U.S. Marshal               ( )
Probation                  ( )
U.S. Attorney              ( )
Atty. for Deft.            ( )
Defendant                  ( )
Warden                     ( )
Bureau of Prisons          ( )
Court Reporter             ( )
Courtroom Deputy           ( )
Orig-Security              ( )
Bankruptcy Clerk's Ofc.    ( )
Other_____        ( )

Date: 7-7-99

Frank G. Johns, Clerk
By: Carolyn B. Bouchard